

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00147-CV

**IN THE INTEREST OF A.D.L.**, et al., Children

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-PA-00815
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Jason Pulliam, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed:  July 20, 2016

AFFIRMED

Christopher D.L. appeals the trial court's order terminating his parental rights to three children, A.D.L., H.D.L., and J.D.L.  In his sole issue on appeal, Christopher asserts the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the children's best interest.  We affirm the trial court's order.

## BACKGROUND

The Texas Department of Family and Protective Services filed an original petition to terminate Christopher's parental rights on April 20, 2015.  At that time, Christopher was incarcerated for assaulting his father and for retaliating against a peace officer.  Christopher's projected release date was January 20, 2017.  The case was called for trial on March 3, 2016.

At the time of trial, the Department's caseworker testified A.D.L. was nine, H.D.L. was seven, and J.D.L. was two. The children were living with their maternal grandmother who intended to adopt them. Both H.D.L. and J.D.L. considered their grandmother to be their mother. All three children considered the grandmother's house to be their home.

The caseworker further testified Christopher had not completed any services or had any contact with the children. The caseworker stated terminating Christopher's parental rights would be in the best interest of the children because Christopher had engaged in a lot of criminal activity, and the caseworker did not believe he could provide a good living environment for the children. The caseworker testified H.D.L. is "autistic, severe and profound." Christopher had no training or education in handling an autistic child. One time, when Christopher was taking care of H.D.L., H.D.L. ran out of the house and was seriously injured when she was hit by a car. Rather than awaiting medical help at the scene, Christopher ran home with H.D.L. Christopher testified he panicked and ran home because H.D.L.'s diaper had fallen off. Christopher admitted he had an outstanding warrant for his arrest at the time. Christopher testified no charges were filed against him due to H.D.L.'s condition "and being autistic that it was something that just happened."

Cynthia S., the children's maternal grandmother, testified she was aware of drug use by both Christopher and her daughter. She also testified her daughter had to drop out of school because Christopher could not take care of the children. Cynthia further testified Christopher and her daughter fought a lot and a lot of violence occurred in the presence of the children. Christopher also once threatened to blow up Cynthia's house. Although Christopher had sent a few letters to the children asking to speak to them, A.D.L. did not want to speak to Christopher.

Cynthia testified she is committed to the children and desired to adopt them. Cynthia stated she is fully capable of protecting the children and providing for their needs.

Christopher denied being unable to take care of the children and testified he was actively taking care of the children before he was incarcerated. Christopher stated the children's mother was not involved in drugs at the time he was incarcerated and took good care of the children. Christopher wanted the opportunity to complete his service plan upon his release from incarceration. Christopher testified he did not believe it was fair that the lack of interest by the children's mother was affecting him. Christopher also testified it was not fair that he "was never given a chance to prove that I'm a fit father."

At the conclusion of the evidence, the trial court announced it was terminating Christopher's parental rights. Christopher appeals.

## STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Family Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(1)(b); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2015); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable burden of proof is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, the court must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.*

"A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*.

In reviewing the factual sufficiency of the evidence to support the termination of parental rights, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

### PREDICATE FINDING

Christopher does not challenge the sufficiency of the evidence to support the predicate statutory grounds for terminating his parental rights. However, evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). The trial court found by clear and convincing evidence that the following predicate findings supported the termination of Christopher's parental rights: (1) Christopher knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) Christopher engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (3) Christopher failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal for abuse or neglect.

**BEST INTEREST FINDING**

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2015). In determining whether a child's parent is willing and able to provide the child with a safe environment, the court should consider: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id*. at § 263.307(b).

Courts also may apply the non-exhaustive Holley factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child;

(2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

The children consider Cynthia's house to be their home. The children are all young, and H.D.L.'s autism makes her especially vulnerable. In response to Christopher's letters, A.D.L. told Cynthia he did not want to speak with Christopher.

While living with Christopher and their mother, the trial judge could have believed Cynthia's testimony that the children were exposed to domestic violence, and both parents used drugs. Christopher had engaged in a lot of criminal activity, and the trial judge also could have believed Cynthia's testimony that Christopher was unable to care for the children. Christopher had no training in how to handle H.D.L.'s autism, and H.D.L. was seriously injured while in his care.

Christopher was incarcerated when the Department filed its petition in April of 2015 and was not scheduled to be released until January 20, 2017, ten months after the date of trial. Christopher had not completed any of his service plan, and he did not provide any testimony of how he would be able to care for the children after being released from incarceration.

Cynthia plans to adopt the children and provide them with a permanent home. Cynthia has shown she is capable of protecting the children and providing for their needs.

Having reviewed the record, we hold the evidence is sufficient to support the trial court's finding that termination was in the children's best interest.

## CONCLUSION

The trial court's order is affirmed.

Jason Pulliam, Justice